CHARLES B. VAN DUSEN, MINNIE B. VAN DUSEN, DAVID L. VAN DUSEN, AND WILLIAM D. VAN DUSEN, AS TRUSTEES OF THE VAN DUSEN TRUST FUND, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77596. Promulgated December 5, 1935.

*Raymond H. Berry, Esq.*, for the petitioners.
*Paul A. Sebastian, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $275.96 for the year 1931. The assignments of error raise the question of whether the declaration of trust executed by Charles B. Van Dusen and his wife, Minnie B. Van Dusen, on February 11, 1929, created one trust or five trusts. The Commissioner allocated all of the taxable income to the petitioner, whereas the petitioner claims that this income was not taxable to it, but to four separate trusts created by the trust instrument. There is no dispute as to the facts. They have been introduced in the record solely in the form of documentary evidence.

The trust instrument recites that Charles B. Van Dusen and his wife, being desirous of devoting a certain portion of their personal property for religious, educational, charitable and benevolent purposes, have deposited with the trustees 50,000 shares of the common capital stock of S. S. Kresge Co. having an aggregate value of at least $1,000,000. The instrument then provides how the trustees shall hold and dispose of the corpus and income of the trust. The trust instrument provides: " This trust shall be known and designated as ' THE VAN DUSEN TRUST FUND '".

The grantors desired but did not absolutely require that the trustees keep the corpus invested in the common stock of S. S. Kresge Co. The trustees are to collect all of the income and divide it into two parts. One part, consisting of 75 percent of the income collected for each year, is to be held and used by the trustees for religious, charitable, benevolent and educational purposes.

Paragraph 8 of the trust instrument is in part as follows:

The other or remaining part, or twenty-five per cent (25%), of the net income of said trust shall be collected by the Trustees and retained in a separate fund, to be known and referred to as the " REDEMPTION ACCOUNT OF THE VAN DUSEN TRUST FUND ", hereinafter referred to as the " REDEMPTION ACCOUNT ", which " REDEMPTION ACCOUNT " shall be administered by the Trustees as part

of, and under the same general terms and conditions of, this Declaration of Trust and shall be considered and treated as part and parcel of this trust for the following uses and purposes.

The trustees are to hold the income thus set aside and paid into the redemption account and to invest and reinvest it. Paragraph 8 further provides:

The income from this portion of said trust shall accumulate in the "REDEMPTION ACCOUNT" as corpus until said "REDEMPTION ACCOUNT" shall terminate as hereinafter provided.

Paragraph 9 is as follows:

The corpus of this "REDEMPTION ACCOUNT" shall be divided into four (4) equal parts,—

(a) One of which equal parts shall be held by the Trustees for DAVID L. VAN DUSEN;

(b) One of which equal parts shall be held by the Trustees for C. THERON VAN DUSEN;

(c) One of which equal parts shall be held by the Trustees for BRUCE B. VAN DUSEN;

(d) One of which equal parts shall be held by the Trustees for WILLIAM D. VAN DUSEN.

The four persons above mentioned are sons of the grantors. The portion of the income allocable to the redemption account is to "be allocated equally to the several accounts of the Grantors' sons in said 'REDEMPTION ACCOUNT'." The income paid into the redemption account and the accrual and receipt of income upon the moneys belonging to that account is not to "become payable, nor available to said sons, but shall immediately become corpus or principal of said 'REDEMPTION ACCOUNT', and distributed to said sons only and at such time as herein provided." The sons are permitted to deposit funds with the trustees to be credited to their respective accounts in the redemption account. Such deposits are subject to all of the provisions and conditions of the trust instrument.

Paragraph 13 of the trust instrument is as follows:

When the share or account in the "REDEMPTION ACCOUNT" of any son shall equal Two Hundred Fifty Thousand Dollars ($250,000.00) the Trustees shall forthwith turn over and deliver unto him one-fourth (¼) of the shares of stock or other securities of the S. S. Kresge Company, or its successor, forming the initial or original corpus of "THE VAN DUSEN TRUST FUND." As soon as the separate account of each son shall equal Two Hundred Fifty Thousand Dollars ($250,000.00) and his proportionate part of the stock or securities of the S. S. Kresge Company, or its successor, shall be delivered to him, his account and interest in the "REDEMPTION ACCOUNT" shall be closed out, and thus eventually the entire "REDEMPTION ACCOUNT" will be closed out, and there remain only the one fund, that being for the religious, charitable and benevolent, and educational purposes hereinbefore provided for.

As soon as the account of any son in the "REDEMPTION ACCOUNT" shall equal Two Hundred Fifty Thousand Dollars ($250,000.00) and one-fourth (¼)

of the stock or other securities of S. S. Kresge Company, or of its successor, has been turned over and delivered to said son, the Two Hundred Fifty Thousand Dollars ($250,000.00) thus accumulated in the "REDEMPTION ACCOUNT" shall be transferred to the major account of the Trustees, and by them invested and re-invested in income-producing property, the income from which shall be used for the purposes and in connection with the objects as hereinbefore mentioned for the furtherance of religious, charitable and benevolent, and educational purposes.

## Paragraph 15 provides as follows:

If at any time any one or more of Grantors' sons desire to withdraw from participation in the "REDEMPTION ACCOUNT" and before his account otherwise terminates, and so request the Trustees in writing, the Trustees may, but NEVERTHELESS within their discretion, distribute to said son the property accumulated in the "REDEMPTION ACCOUNT" for said son, or retain said property in the son's account, in the "REDEMPTION ACCOUNT" and distribute to him his pro rata share of his interest in the stock or other securities of S. S. Kresge Company, or its successor.

The trust instrument provides that if a son takes less than his pro rata share of the S. S. Kresge Co. stock, the remainder of his share of the stock shall be held by the trustees and allocated ratably to the accounts of the remaining participants in the redemption account and the redemption account and the separate accounts therein shall continue until they equal respectively an amount correspondingly greater than $250,000. The amount in the redemption account allocable to any son who retires, is to "be transferred to the major account of the Trustees." The accounts are to go on without interruption in case the trustees decide against permitting a withdrawal. The sons are permitted to contract with each other with reference to their separate interests in the redemption account and the trustees are to recognize their contracts to the extent only that they refer and apply to the sons.

The estate of any deceased son is to have all the rights, privileges, and benefits that the deceased would have had under the trust instrument but for his demise, and the redemption account is not to be terminated by the death of a son. Stock dividends and the like are to become corpus of the trust.

The trustees are to have the right to borrow money in anticipation of the receipt of income from the corpus and to pledge the assets of the trust as collateral for the loan, provided that total loans shall not exceed 70 percent of the net income of the trust for the last preceding year.

## Paragraph 23 provides as follows:

The affairs of this trust shall be conducted on a calendar year basis and the Trustees shall prepare, or cause to be prepared, an annual financial statement reflecting therein the corpus of the trust, receipts and disbursements of income and designating sources of said receipts and the disposition of the income.

Paragraph 24 is as follows:

This trust shall be irrevocable from and after February 11, 1929, and terminate only in the manner following:

(a) The Grantors, or the survivor, may elect to terminate this trust provided said election shall not be exercised prior to February 11, 1934.

If at the time of said election the accounts of the several sons in the "REDEMPTION ACCOUNT" shall not have terminated and the property therein distributed, as hereinbefore provided, this trust shall nevertheless continue irrevocably and shall terminate only when each and every account of Grantors' sons in the "REDEMPTION ACCOUNT" has terminated as hereinbefore provided.

(b) If neither the Grantors nor the survivor shall elect to terminate the trust as provided above, this trust shall terminate at the expiration of six (6) years from the death of the surviving Grantor, provided, however, that if at that time the accounts of the Grantors' sons in the "REDEMPTION ACCOUNT" shall not have terminated and the property therein distributed as hereinbefore provided, then this trust shall continue irrevocably until each and every account of the Grantors' sons in the "REDEMPTION ACCOUNT" has terminated and the property therein distributed, as hereinbefore provided.

(c) Upon the termination of this trust, the Trustees shall distribute the property then in their hands, which it is expected will then consist of One Million Dollars ($1,000,000.00) in cash or liquid securities, to the general types and classes of religious, charitable and benevolent, and educational beneficiaries enumerated and set forth herein for the distribution of the income from the seventy-five per cent (75%) of the trust to religious, charitable and benevolent, and educational purposes.

The trustees named were the two grantors and two of their four sons. Vacancies are to be filled by the other two sons. Throughout the trust instrument the trust is referred to in the singular and the redemption account is referred to in the singular.

The dividend account maintained by the trustees shows a debit of 75 percent of the dividends to receipts and disbursements account and 25 percent to redemption account. In an account captioned " Redemption Account Corpus (general)" the dividends are credited and one fourth of the amount is then debited in this account and credited to " Redemption Account for David L. Van Dusen—Van Dusen Trust Fund." One fourth is credited to each of three similar accounts bearing the name of one of the other three sons. These four accounts show no debits whatever. The trustees also maintained income accounts to record the receipt of income from the investment of the corpus of the redemption account. This income is periodi-cally credited to the general redemption account and from there credited to the four separate accounts under the name of the sons.

The trustees for the calendar year 1931 filed a fiduciary return on form 1041 reflecting the income from the S. S. Kresge stock and securities held in the redemption account. This return segregates the general income and the income of the redemption account and carries the following statement:

Inasmuch as the income allocable to the four (4) separate accounts of the " Redemption Account " is " dividend income " and in each account is less than $10,000, and " other income " is less than $1,500.00 for each account. therefore no individual returns are filed for said accounts.

The petitioner contends that it is not subject to any income tax for the reason that the trust indenture creates not one trust, but five, and all of the income of the petitioner which is not distributed to charity is paid or credited to the trustees of the other four trusts. The Commissioner has held that the trust indenture created but one trust and all of the income except the 75 percent which went to charities is taxable to the petitioner. The intention of the grantors must be determined from the trust instrument and the answer to the question of whether one trust or five trusts were created depends upon a proper interpretation of the trust instrument. General rules of interpretation are helpful, but the interpretation placed upon other trust instruments in other cases may not be very helpful.

The grantors executed only one deed and named but one group of trustees. Several trusts can be created in one instrument and several trusts may be administered by the same persons acting as trustees. The grantors throughout the instrument here in question have referred to the trust in the singular, but neither that fact nor any other single fact need be regarded as controlling. The grantors never referred to the redemption account as a separate trust. They mentioned it simply as an account. They have stated in paragraph 8 that it " shall be administered by the Trustees as part of, and under the same general terms and conditions of, this Declaration of Trust and shall be considered and treated as part and parcel of this trust for the following uses and purposes." Other parts of the trust instrument would have to very definitely indicate that five separate trusts were created in order to offset the clear language of paragraph 8 just quoted.

However, when the trust is looked at in its entirety it shows that the grantors intended to create and actually created but one trust. They had a single plan which involved the keeping of different accounts, but none of the separate accounts could be separated from the main trust so as to constitute a separate trust. The original trust property consisted of 50,000 shares of S. S. Kresge Co. stock. None of that stock was ever to be separated from the main trust by being placed in a separate trust. When it went out of the main trust it went not in trust, but absolutely to the beneficiaries. Seventy-five percent of the dividends from the stock while it remained in the trust was given to charity. The other 25 percent of the income from that stock was not placed in any separate trust, but was to be retained by the single trust and eventually was to form the sole remaining corpus of that trust. That income was to be accounted for

separately in the redemption account and was there to be divided into four parts and each part tagged with the name of one of the sons. But the funds thus accounted for were not to be received by the sons under the normal application of the trust. The four sons took no vested interest in any funds accounted for in the redemption account. These separate accounts were necessary under the grantors' plan for the purpose of determining the time when each son should receive his part of the original corpus of this single trust and for the purpose of providing assets at that time to substitute for the S. S. Kresge Co. stock. The keeping of separate accounts was necessary, but the property was not actually divided. Charity was to receive 75 percent of certain income and, later, about $1,000,000 which was to be derived from accumulation of the other 25 percent. The sons were to receive the S. S. Kresge stock. No transfers from one trust to another were contemplated. The grantors clearly indicated that their entire purpose was to be accomplished by holding all of the property in one trust. The Commissioner did not err.

*Decision will be entered for the respondent.*